UNITED STATES of America, Plaintiff,

v.

Daynetta McKIBBEN, a/k/a Daynetta Bald Eagle, and Phyllis Bald Eagle, Defendants.

No. CR 95–30093.

United States District Court,
D. South Dakota,
Central Division.

May 21, 1996.

Jamie L. Damon, Pierre, SD, for Phyllis Bald Eagle.

## ORDER

KORNMANN, District Judge.

Defendants filed a joint motion to suppress evidence, Doc 19. The motion was assigned to U.S. Magistrate Judge Mark Moreno pursuant to the scheduling order herein. The magistrate judge conducted an evidentiary hearing on the motion and submitted his Report and Recommendation For Disposition to the Court on March 29, 1996. A copy of such Report and Recommendation For Disposition was served upon the parties as required by 28 U.S.C. § 636 and the defendants filed written objections thereto.

■■■ The Court has made a de novo review of the record and transcripts herein. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), makes it clear that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of that automobile." The United States Court of Appeals for the Eighth Circuit, following *Belton,* has held that "a police officer who has lawfully arrested the *occupant* of an automobile may, contemporaneously with that arrest, search the passenger compartment, even if the arrestee is no longer inside it." *United States v. Morales,* 923 F.2d 621, 626 (8th Cir.1991) (emphasis added). Here, Donald Pine, a mere occupant of the McKibben vehicle, was lawfully arrested. The tribal police officer could lawfully search the vehicle after placing Pine in the patrol car.

The Court questions the application of *Belton* to this case as the tribal police officer did not have the intention to search the McKibben vehicle as a lawful incident to Pine's arrest. However, the Court could find no authority and was cited to no authority distinguishing *Belton* under these circumstances.

■■■ If the officer did not intend to search the vehicle as a result of Pine's arrest,

Mikal G. Hanson, Assistant United States Attorney, Pierre, SD, for Plaintiff United States of America.

Jeremiah J. Davis, Dakota Legal Services, Pierre, SD, for Daynetta McKibben, a/k/a Daynetta Bald Eagle.

the officer must have been justified to search the vehicle under the "plain view doctrine". Magistrate Moreno discusses the application of this doctrine at footnote 12 of his Report and Recommendation. The Eighth Circuit, in *United States v. Garner*, 907 F.2d 60, 62 (8th Cir.1990), set forth the requirements of a warrantless search under the plain view doctrine: "(1) the initial intrusion must be lawful; (2) the discovery of the evidence must be inadvertent; and (3) the incriminating nature of the evidence must be immediately apparent." Further, "an automobile on a public street may be searched without a warrant as long as the searching agents have probable cause to believe evidence of a crime will be found in the vehicle." *United States v. Horne*, 4 F.3d 579, 585 (8th Cir.1993).

██ "All that is required [under the first requirement] is that at the time the officers observed the [evidence] in the car, they must have had a right to be in close proximity to the car at a point from which the observation occurred." *United States v. Hatten*, 68 F.3d 257, 260 (8th Cir.1995). The tribal police officer was lawfully standing outside the vehicle talking to Pine's girlfriend, at Pine's request, when he discovered the Zig–Zag paper. The first requirement has been met. Further, the discovery of the papers was inadvertent.

Does the presence of Zig–Zag paper make it immediately apparent that there is incriminating evidence in the vehicle or does it, at a minimum, amount to probable cause to believe marijuana will be found in the vehicle? While Zig–Zag paper is often used for rolling cigarettes, the Eighth Circuit has pointed out that it is commonly used to roll marijuana cigarettes. *Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703, 710 n. 4 (8th Cir.1984). The Ninth Circuit has held that the presence of Zig–Zag papers warrants the suspicion of marijuana. *Maguire v. United States*, 396 F.2d 327, 330 (9th Cir.1968). All that is required is "probable cause to associate the property with criminal activity." *United States v. Garner*, 907 F.2d at 62.

██ In the present case, it is not only the presence of the Zig–Zag paper but also the presence of the marijuana roaches in an ashtray which constitutes probable cause for the warrantless search. The vehicle was stopped on a public street. The officer's actions in looking through the vehicle's open window, even with the aid of a flashlight, did not constitute a "search" *United States v. Hatten*, 68 F.3d at 261. Thus, the discovery of the roaches in the ashtray justified a warrantless search under the plain view doctrine. It also justified a warrantless search of the vehicle under the probable cause standard set forth in *Horne, supra.*

While the Court is very uncomfortable with the facts of this case, this Court is nonetheless bound by the principles set forth by the United States Court of Appeals for the Eighth Circuit. The application of these principles applied to the facts of this case suggests the search was valid and the evidence should not be suppressed. The ruling would be otherwise in the absence of binding precedents. The Court determines that the defendants' objections should be overruled and the findings and recommendations of the magistrate judge should be accepted and the motion to suppress denied.

Now, therefore,

IT IS ORDERED:

(1) The U.S. Magistrate Judge's Report and Recommendation for Disposition of the Defendants' Joint Motion to Suppress Evidence as filed March 29, 1996, is hereby adopted as the Findings of Fact and Conclusions of Law herein.

(2) The defendants' motion to suppress evidence, Doc. 19, is denied.

### ORDER

Defendants filed separate motions for a voluntariness hearing, Docs. 26, 34. The motions were assigned to U.S. Magistrate Judge Mark Moreno pursuant to the scheduling order herein. The magistrate judge conducted an evidentiary hearing on the motions and submitted his Report and Recommendation For Disposition to the Court on March 29, 1996. A copy of such Report and Recommendation For Disposition was served upon the parties as required by 28 U.S.C. § 636 and the defendants have filed written objections thereto.

The Court has made a de novo review of the record and transcripts herein. The Court determines that the defendants' objections should be overruled and the findings and recommendations of the magistrate judge should be accepted and the motions for voluntariness hearing denied.

Now, therefore,

IT IS ORDERED:

(1) The Report and Recommendation for Disposition of the Defendants' Motions for Voluntariness Hearing filed by the Magistrate Judge March 29, 1996, is hereby adopted as the Findings of Fact and Conclusions of Law herein.

(2) The defendants' motions for voluntariness hearing, Docs. 26 and 34, are denied.

## REPORT AND RECOMMENDATIONS FOR DISPOSITION OF DEFENDANTS' JOINT MOTION TO SUPPRESS EVIDENCE

MORENO, Magistrate Judge.

Defendant, Daynetta McKibben, a/k/a Daynetta Bald Eagle, (McKibben) and Phyllis Bald Eagle, (Bald Eagle)[1] have filed a Joint Motion to Suppress Evidence, Docket No. 19. This Court held a hearing on the Motion on February 21, 1996 in accordance with the District Court's[2] Order Fixing Dates, Docket No. 14 and Order Granting Continuance, Docket No. 23. Because McKibben and Bald Eagle's Motion is a dispositive one, the Court is only authorized to determine the Motion on a report and recommendation basis. Pursuant to 28 U.S.C. § 636(b)(1), the Court does now make and propose the following report and recommendations for disposition of McKibben and Bald Eagle's Motion.

### PROCEDURAL HISTORY

McKibben and Bald Eagle were charged jointly by indictment filed on December 7, 1995, with the offense of Possession With Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841. The indictment alleges that on or about July 18, 1995, in the District of South Dakota, they knowingly and intentionally possessed with intent to distribute marijuana, a Schedule I controlled substance. McKibben and Bald Eagle were arrested on December 15, 1995. That same day, they appeared before this Court for an initial appearance and were detained. Three days later, both were arraigned and released on a third-party custody basis subject to various conditions.

On January 19, 1996, McKibben and Bald Eagle filed a Motion to Suppress Evidence. In their Motion, they seek "to suppress evidence seized by the Cheyenne River Police Department on July 18, 1995, including[,] but not limited to[,] green leafy substance[s] identified as marijuana, sandwich bags, marijuana cigarettes and rolling papers," on the basis that the arresting officer "had no reasonable suspicion of criminal activity at the time of the search", that they were subject to "an unreasonable search and seizure in violation of the Fourth Amendment to the U.S. Constitution", and that they had "a heightened expectation of privacy" as to the contents of certain enclosed containers within the vehicle that was searched, including their purses.

Upon review of the Motion and consultation with counsel, this Court scheduled a hearing on the Motion for February 21, 1996. At the hearing, plaintiff, United States of America, ("Government") offered evidence and testimony through Leslie Shooter, a police officer for the City of Eagle Butte, Mark Woods, an adult detention sergeant for the Cheyenne River Sioux Tribe (CRST), and James Pearman, a patrol officer for CRST. McKibben and Bald Eagle offered no testimony in support of their Motion but did offer one exhibit.

### FACTUAL BACKGROUND

On July 18, 1995, Shooter received information that Donald Pine, who had a warrant out for his arrest, was in a vehicle seen at the Super Pumper, a convenience store located on the north edge of Eagle Butte. Shooter,

---

**1.** McKibben and Bald Eagle are sisters.

**2.** The Honorable Charles B. Kornmann, United States District Judge, presiding.

who was acquainted with Pine and had issued him "a couple of citations" before, proceeded to the area armed with a license plate number for and a description of the vehicle Pine was in and the cowboy hat he was wearing, as well as where he was seated in the vehicle. Subsequently, near the Harding Motel, Shooter met and passed a vehicle matching the description that had been given to him. He then turned around, and after confirming the license plate number and observing the black cowboy hat he had been told Pine was wearing, stopped the vehicle. Shooter exited the patrol car, proceeded toward the vehicle and, with the help of a flashlight, identified Pine in the passenger seat and arrested him on the outstanding warrant. Shooter then searched and handcuffed Pine and placed him in the patrol car. Moments later and while in the patrol car, Pine requested that Shooter talk to Pine's girlfriend, McKibben, the driver and owner of the vehicle, and tell her that he needed cash that night to make bond. As a courtesy,[3] Shooter went back to the vehicle and informed McKibben, who was still seated behind the wheel and in the driver's seat, of Pine's request. During his conversation with McKibben and while standing outside the driver's side door of the vehicle, Shooter observed a package of "Zig–Zag" brand rolling papers sitting on the inside speedometer console. When Shooter observed a package of generic manufactured cigarettes in the same console, he became suspicious, reached in and grabbed the rolling papers and inquired of McKibben who they belonged to. McKibben told Shooter that the papers were her father's and he was in Sioux Falls. Upon hearing this, Shooter asked McKibben to step out of the vehicle. As McKibben was doing so, Pearman arrived

at the scene and he and Shooter requested Bald Eagle and Amos Cook, the remaining two occupants, to exit the vehicle. Once everyone was out, Shooter went back to the vehicle, stuck his head in through the driver's side door, shined his light around the front seat area and soon discovered two marijuana roaches in an ashtray within arms reach of where McKibben and Pine had been seated. At that point, Shooter directed Pearman to place everyone under arrest for possession of marijuana, and McKibben, Bald Eagle and Cook were searched and placed into Shooter's patrol car. While searching the purse Bald Eagle carried with her from the vehicle, Pearman found eight tightly-rolled sandwich bags containing marijuana. After placing McKibben, Bald Eagle and Cook into the patrol car and transporting them to the Law Enforcement Center, Shooter listened to an audio tape he surreptitiously recorded of conversations McKibben had while in the car [4], and heard her say that she hoped law enforcement authorities would not look at her purse or find something in it. Upon hearing this, Shooter and his supervisor, Sergeant Pretends Eagle, retrieved McKibben's purse from the vehicle, (which in the meantime had been transported to the Law Enforcement Center) opened it and found another black leather purse inside containing one big and three smaller sandwich bags of marijuana. In addition, several other bags of marijuana were found in the glove compartment of the vehicle. More small bags of marijuana were likewise found in a seam of McKibben's purse [5] as well as drug paraphernalia and $118 in cash. $550 in cash was found in Bald Eagle's purse along with a piece of paper

---

**3.** *C.f.* Mtn. Hrg. (March 1, 1996) Tr. at 10. Although this fact was testified to at the March 1, 1996 Motion Hearing, defense counsel had no objection to the Court considering the evidence and testimony adduced at that Hearing when passing on the Suppression of Evidence Motion. *Id.* at 14.

**4.** While secretly tape recording personal conversations in a police car may offend individual sensibilities, the vast majority of jurisdictions have found that a police vehicle is not a sanctuary for private discussion and that detainees/arrestees have no legitimate expectation of privacy while in the same. *See United States v. Clark,* 22

F.3d 799, 801–02 (8th Cir.1994); *United States v. McKinnon,* 985 F.2d 525, 527–28 (11th Cir. 1993), *cert. denied,* 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993); *State v. Ramirez,* 535 N.W.2d 847, 850 (S.D.1995); *see generally,* J. Carr, *The Law of Electronic Surveillance,* § 2(b)(1) (1995).

**5.** McKibben initially took her purse with her when she got out of the vehicle while at the scene, but then threw it back into the vehicle, after getting permission to do so, before she was searched. Mtn. Hrg. (March 1, 1996) Tr. at 12–13.

that had dates, names of towns and dollar amounts written on it.

Later, McKibben and Bald Eagle were interviewed by law enforcement authorities and gave incriminatory statements concerning the items that were found and seized from the vehicle and their purses.

## DISCUSSION

### A. Standing.

■ Because Fourth Amendment rights are personal, an individual challenging a search and seizure must show personal standing, that is, a legitimate expectation of privacy in the area or items searched or seized. *United States v. Kiser*, 948 F.2d 418, 423–24 (8th Cir.1991), *cert. denied*, 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992) (*citing Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 423–24 n. 1, 58 L.Ed.2d 387 (1978)). To establish a legitimate expectation of privacy, a defendant bears the burden of demonstrating that he/she has a subjective expectation of privacy that society is prepared to recognize as objectively reasonable. *Id.* (*citing Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986)); *see also, Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

■ The standing issue has, in large part, been glossed over by the parties. Although McKibben and Bald Eagle discuss the issue in one of their briefs, they do so in a cursory manner. Specifically, they do not explain how they had an objective expecta-

tion of privacy in the vehicle and their purses at the time the same were searched or why their expectation is objectively reasonable. Nonetheless, it appears that McKibben had a legitimate expectation of privacy in the vehicle and her purse and that Bald Eagle likewise had such an expectation in her purse.

When determining whether standing exists, a court looks at a number of factors, including the ownership, possession and/or control of the area searched or items seized, the historical use of the property or item, the ability to regulate access, the totality of the circumstances surrounding the search, the existence or non-existence of a subjective anticipation of privacy, and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir.1994) (*citing United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir.1991)).

Here, McKibben had possession and control of both the vehicle and her purse and owned the same. Similarly, Bald Eagle owned and had possession or control of her purse at the time it was taken from her and searched. Under these circumstances, there is a sufficiently close connection or nexus between McKibben and Bald Eagle and the items that were searched and ultimately seized to confer standing.[6] *See generally*, W. LaFave, 5 *Search and Seizure*, § 11(e) at 170–197 (3d ed. 1996).

### B. Stop of the Vehicle.

■ Although McKibben, by virtue of her citation to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) seems to contend that Shooter's initial stop of the vehicle was unlawful, such a contention, assum-

---

6. Bald Eagle, however, only had standing to contest the search of her person and property and the seizure of the items taken therefrom. The Supreme Court in *Rakas* held that because Fourth Amendment rights are personal and cannot be vicariously asserted, 439 U.S. at 133–34, 99 S.Ct. at 424–26, a passenger who makes a Fourth Amendment challenge to the search of an automobile belonging to another, bears the burden of proving a legitimate expectation of privacy to the areas searched and the items seized. *Id.* at 131, n. 1, 148–49, 99 S.Ct. at 424 n. 1, 432–33; *see also, Rawlings v. Kentucky*, 448 U.S. at 104–05, 100 S.Ct. at 2561–62; *United States v.*

*Macklin*, 902 F.2d 1320, 1330 (8th Cir.1990), *cert. denied*, 498 U.S. 1031, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991); *United States v. Fahnbulleh*, 748 F.2d 473, 477 (8th Cir.1984), *cert. denied*, 471 U.S. 1139, 105 S.Ct. 2685, 86 L.Ed.2d 702 (1985). Here, Bald Eagle has failed to meet her burden and, in particular, show that she had possession of the vehicle and its keys or had some other possessory interest in the vehicle and its contents. As such, she had no legitimate expectation of privacy in the areas of the vehicle that were searched or in any items (except her own personal possessions) found therein. *Macklin*, 902 F.2d at 1330.

ing the same is even before this Court for consideration, is wholly without merit. Indeed, unlike the vehicle stops passed on by the Supreme Court in *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) and in *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the stop of McKibben's vehicle was based on a radio report concerning Pine, and included a license plate number and description of the vehicle in which Pine was seen riding, as well as the hat he was wearing and information that a warrant was out for his arrest. Shooter, who was acquainted with Pine and recognized him when he first passed the vehicle, possessed more than the requisite reasonable, articulable suspicion under *Terry* and its progeny to justify the stop. *See United States v. Sokolow,* 490 U.S. 1, 8–9, 109 S.Ct. 1581, 1585–87, 104 L.Ed.2d 1 (1989); *United States v. Hensley,* 469 U.S. 221, 227–29, 105 S.Ct. 675, 679–81, 83 L.Ed.2d 604 (1985); *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *see also, United States v. Garcia,* 23 F.3d 1331, 1334 (8th Cir.1994); *United States v. Cummins,* 920 F.2d 498, 500–501 (8th Cir. 1990), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991); *United States v. Tellez,* 11 F.3d 530, 531–33 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1630, 128 L.Ed.2d 354 (1994); *see generally,* 4 LaFave, § 9.4(i) at 230–240. Moreover, the absence of a challenge to the propriety of Pine's warrant or his arrest further distinguishes the instant case from *Whiteley* and *Prouse* and serves to underscore the validity of Shooter's stop.

### C. Initial Search of the Vehicle.

McKibben and Bald Eagle claim that Shooter's search and ultimate seizure of "Zig–Zag" rolling papers and two marijuana roaches violated their Fourth Amendment rights. The Government counters by arguing that Shooter's lawful custodial arrest of Pine permitted Shooter, as a contemporaneous incident of the arrest, to search the passenger compartment of the vehicle and seize the rolling papers and marijuana roaches from the instrument panel area.

As a general rule, a lawful custodial *arrest* may be accompanied by a warrantless *search*—not only of the arrestee's "person" but the area within the arrestee's "immediate control" for "any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape [and jeopardize] ... the officer's safety," as well as for "evidence on the arrestee's person [or in] 'the area into which an arrestee might reach in order to grab a weapon or [evidentiary items'] in order to prevent its concealment or destruction...." *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969) (invalidating, as overbroad, search of entire *residence* in which owner was arrested) (*emphasis added*).

More than a decade later, the Supreme Court in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), outlined the *scope* of the zone of "immediate control", *see Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040, in the context of a warrantless security search of an automobile passenger compartment conducted as a contemporaneous incident of the arrests of all its occupants. *Belton* upheld a warrantless search of the entire "passenger compartment" against a claim that all its occupants were *outside* the vehicle at the time of the search—thus, as a practical matter, no longer within "reach" of any weapons, evidence or contraband located within the passenger compartment. 453 U.S. at 460, 101 S.Ct. at 2864.

Alluding to the difficulties encountered by lower courts in applying the "immediate control" concept announced in *Chimel* and the "disarray" created by this in appellate cases, the *Belton* Court stressed that a bright-line rule was necessary to foster both privacy and law enforcement interests: "[T]he *protection* of the Fourth and Fourteenth Amendments *'can only be realized if* the police are acting under a *set of rules* which, *in most instances, makes it possible to reach a correct determination beforehand* as to whether an invasion of privacy is justified in the interest of law enforcement,'" *id.* (citation omitted) (emphasis added), especially since law enforcement officers involved in an arrest on a roadway have "only limited time and expertise to reflect on and balance the social and individual

interests involved in the specific circumstances they confront." *Id.* at 458–59, 101 S.Ct. at 2863–64.

The *Belton* Court explicitly predicated its bright-line rule on "the *generalization* that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, *even if not inevitably,* within 'the *area* into which an arrestee *might* reach in in order to grab a weapon [or evidentiary item].'" *Id.* at 460, 101 S.Ct. at 2864 (*quoting Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040) (emphasis added). Against this pragmatic framework, the Court articulated its bright-line rule: "We hold that when a policeman has made a lawful custodial arrest of the occupant[7] of an automobile, he may, as a *contemporaneous incident of that arrest,* search the passenger compartment of that automobile," and "examine the contents of any [open or closed] containers[8] found within the passenger compartment...." *Id.,* (footnote omitted) (emphasis added).[9] The Court, however, made it clear that the scope of the "passenger compartment" under its bright-line rule did not encompass the automobile's trunk. *Id.* at 460–61, n. 4, 101 S.Ct. at 2864–65, n. 4.

The initial search of the vehicle, which resulted in the seizure of the rolling papers and two marijuana roaches, was a lawful search incident to arrest under *Belton.* The search was conducted at the scene and within minutes of Pine's arrest and, therefore, satisfied the temporal proximity and "contemporaneous" concerns raised by *Belton. United States v. Morales,* 923 F.2d 621, 627 (8th Cir.1991); *see also, United States v. Willis,* 37 F.3d 313 (7th Cir.1994) (search at arrest scene lawful notwithstanding brief delay; Court does not "believe the requirement that a search incident to arrest be 'contemporaneous' with the arrest means that an officer is forbidden to undertake any intervening act at all between arrest and search"); *see generally,* 3 LaFave, § 7.1(c), n.n. 77 & 78 at 448. The fact that Pine had been removed from the vehicle and placed in Shooter's patrol car prior to the search is of no moment. *Belton,* 453 U.S. at 459–60, 101 S.Ct. at 2863–64; *see also, United States v. Arias–Cardenas,* 36 F.3d 36 (8th Cir.1994) (search of vehicle parked at a convenience store a short distance from where passenger arrested); *United States v. Mans,* 999 F.2d 966 (6th Cir.) (arrestee seated in police car under watch of another officer), *cert. denied,* 510 U.S. 999, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993); *United States v. Horne,* 4 F.3d 579 (8th Cir.1993) (search of loveseat and chair after detainees in house handcuffed), *cert. denied,* 510 U.S. 1138, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994); *United States v. Lucas,* 898 F.2d 606 (8th Cir.) (search of a cabinet in kitchen after handcuffing the defendant), *cert. denied;* 498 U.S. 838, 111 S.Ct. 112, 112

---

**7.** The *Belton* holding plainly applies to custodial arrests of all *occupants* of a vehicle and is not limited to the driver. *United States v. Arias–Cardenas,* 36 F.3d 36, 38 (8th Cir.1994); 3 La-Fave, § 7.1(c), n. 71 at 445; *see also, United States v. Riedesel,* 987 F.2d 1383 (8th Cir.1993) (defining "occupant" broadly).

**8.** " 'Container' " denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing and the like." 453 U.S. at 460, n. 4, 101 S.Ct. at 2864, n. 4. *See also, United States v. Wilson,* 758 F.2d 304 (8th Cir.1985) (front console); *United States v. McCrady,* 774 F.2d 868 (8th Cir.1985) (glove compartment); *State v. Peterson;* 407 N.W.2d 221 (S.D.1987) (same); *United States v. Richards,* 967 F.2d 1189 (8th Cir. 1992) (purse); *United States v. Morales,* 923 F.2d 621 (8th Cir.1991) (bags, including companion's purse; *United States v. Clark,* 754 F.2d 789 (8th Cir.1985) (purse); *United States v. Valiant,* 873

F.2d 205 (8th Cir.) (briefcase), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 78 (1989).

**9.** The *Belton* bright-line rule likewise extends to *any* container within the passenger compartment even though the container's outward appearance might foreclose the possibility that it would hold a weapon or evidence: "The authority to search *the person* incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does *not depend* on what a court may later decide was the *probability* in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion upon the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Belton,* 453 U.S. at 461, 101 S.Ct. at 2864–65 (*citing United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973)) (emphasis added).

L.Ed.2d 81 (1990); *see generally, United States v. Jackson,* 918 F.2d 236 (1st Cir.1990) (handcuffed in police car); *United States v. White,* 871 F.2d 41 (6th Cir.1989) (in police car); *United States v. Karlin,* 852 F.2d 968 (7th Cir.1988) (handcuffed and in police car), *cert. denied,* 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Cotton,* 751 F.2d 1146 (10th Cir.1985) (handcuffed); *United States v. Collins,* 668 F.2d 819 (5th Cir.1982) (same); *c.f., United States v. Doward,* 41 F.3d 789, 791–92, n. 1 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995); 3 La-Fave, § 7.1(c), n. 79 at 48–49.[10]

### D. Search of McKibben's and Bald Eagle's Persons and of Latter's Purse.

■ After their arrest but before being placed in Shooter's patrol car, McKibben and Bald Eagle were searched. Bald Eagle's purse, which she had carried with her after exiting the vehicle, was also searched. McKibben and Bald Eagle contend that the searches were unlawful. The Government claims that the searches were proper under *Belton.*

In *Chimel,* the Supreme Court declared that when an arrest is made, the arresting officer may search the person arrested and to search for and seize any evidence on the arrestee's person and the area within her immediate control. 395 U.S. at 762–63, 89 S.Ct. at 2039–40.

Following *Chimel,* some courts took the position that a full search of the person incident to a lawful arrest was *per se* reasonable, while others reached a contrary conclusion, often allowing no more than a pat-down when the only conceivable purpose was protection of the arresting officer. *See* 3 LaFave, § 5.2(a), n.n. 2 & 3 at 65.

In *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and the companion case of *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Court resolved the ambiguity left open in *Chimel,* and made it clear that once there is a lawful "custodial arrest", a "full search of the person" requires "no additional justification." *Robinson,* 414 U.S. at 235, 94 S.Ct. at 476.

The officer in *Robinson,* upon observing the defendant driving a 1965 Cadillac, signalled him to stop. As the result of his investigation following a check of the operator's permit four days earlier, it was determined that the defendant was operating a vehicle after revocation of his permit and that he had subsequently obtained a tempo-

---

**10.** The Government also argues that the warrantless seizure of the rolling papers was justified under the "plain view doctrine" and provided Shooter with probable cause to make a limited search of the vehicle's front passenger compartment. This doctrine permits police officers to seize evidence without a warrant if (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the object's incriminating character is immediately apparent, and (3) the officer has a "lawful right of access to the object itself." *United States v. Hatten,* 68 F.3d 257, 260 (8th Cir.) (*quoting Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990), *cert. denied,* —— U.S. ——, 116 S.Ct. 1026, 134 L.Ed.2d 105 (1996)). The "immediate apparent" requirement means that officers must have "probable cause to associate the property with criminal activity." *United States v. Garner,* 907 F.2d 60, 62 (8th Cir.) (*citing Texas v. Brown,* 460 U.S. 730, 741, 103 S.Ct. 1535, 1542–43, 75 L.Ed.2d 502 (1983), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991)); *Minnesota v. Dickerson,* 508 U.S. 366, 375–77, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). "Probable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant the belief that 'certain items may be contraband or stolen property or useful as evidence of a crime.'" *Garner,* 907 F.2d at 62 (*quoting Brown,* 460 U.S. at 742, 103 S.Ct. at 1543). Here, it is debatable whether Shooter had probable cause or merely reasonable suspicion that the rolling papers were by their nature incriminatory at the time he seized them. *See Arizona v. Hicks,* 480 U.S. 321, 326–28, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987); 773 F.Supp. 965, 967–68 (E.D.Tex.1991) (suggesting that something more than the mere observation of rolling papers is necessary to justify the warrantless search of a vehicle and the seizure of items located therein), *aff'd,* 983 F.2d 1061 (5th Cir.1993). Yet, because Shooter did have a lawful basis for examining the rolling papers (as a result of exercising his *Belton* power to make a full search of the passenger compartment incident to arrest, even if probable cause for search and seizure of the papers was lacking) his inspection of the papers as well as his subsequent search of the interior portion of the vehicle were lawful notwithstanding the absence of full probable cause or even reasonable suspicion. *Id.*

rary permit by misrepresentation. When shown the temporary permit again, the officer placed the defendant under arrest and proceeded to pat him down. Because he could not determine the precise size or consistency of an object he felt in the defendant's breast pocket, the officer removed it. The object was a "crumpled-up" cigarette package, containing fourteen gelatin capsules of heroin. The heroin seized was admitted at trial and the defendant was convicted. His conviction, however, was overturned by the District of Columbia Court of Appeals; the plurality opinion concluded that when an arrest is made for a crime without evidence, the search incident thereto must be limited to an intrusion reasonably required to discover weapons, which in the case of a full custody arrest for a traffic violation would be a frisk. *United States v. Robinson*, 471 F.2d 1082, 1095–1108 (D.C.Cir.1972).

The Supreme Court reversed. Writing for the majority, Justice Rehnquist found that: "No doubt has been expressed" in the Court's prior decisions or the "early authorities" as to "the unqualified authority of the arresting authority to search the person of the arrestee," and concluded that there was no need "to qualify the breadth" of the general authority to search incident to a lawful custodial arrest on an assumption that persons arrested for the offense of driving while their licenses have been revoked are less likely to possess dangerous weapons than are those arrested for other crimes. 414 U.S. at 225, 235, 94 S.Ct. at 472, 476–77. Justice Rehnquist's "more fundamental disagreement" with the Court of Appeals came from "its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest," as is evident from the following:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person and incident to a lawful custodial arrest, while based upon the need

to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search and we hold that in the case of a lawful custodial arrest, full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

414 U.S. at 235, 94 S.Ct. at 476–77.

The facts in *Gustafson* are similar to those found in *Robinson*. Gustafson, the officer, arrested the defendant for failure to have his vehicle operator's license in his possession. Gustafson then conducted a pat-down of the defendant and found a cigarette box containing marijuana cigarettes in it. The Supreme Court, in an opinion written by Justice Rehnquist, upheld the defendant's conviction, concluding that *Robinson* controlled:

> Though the officer here was not required to take the petitioner into custody by police regulations as he was in *Robinson*, and there did not exist a departmental policy establishing the conditions under which a full-scale body search should be conducted, we do not find these differences determinative of the constitutional issue.... It is sufficient that the officer had probable cause to arrest the petitioner and that he lawfully effectuated the arrest and placed the petitioner in custody. In addition, as our decision in *Robinson* makes clear, the arguable absence of "evidentiary" purpose for a search incident to a lawful arrest is not controlling.

414 U.S. at 265, 94 S.Ct. at 491–92.

Pearman's on-the-scene searches of McKibben and Bald Eagle's persons were authorized under *Chimel*, *Robinson*, *Gustafson*, and/or *Belton* and their progeny. The searches were conducted for officer safety

reasons and pursuant to a standardized procedure utilized by tribal officers. The searches likewise flowed from custodial arrests that were based on probable cause.[11]

### E. Search of the Vehicle at the Law Enforcement Center.

■ Following the arrest of McKibben and Bald Eagle and their removal from the scene, McKibben's vehicle was transported to the Law Enforcement Center. There, after Shooter and one or more tribal officers listened to a tape recorded dialogue that was had in the patrol car, McKibben's vehicle was searched and marijuana, drug paraphernalia and cash were found in the vehicle and McKibben's purse located therein. McKibben and Bald Eagle maintain that the search of the vehicle was invalid and should be suppressed. The Government asserts that the search was properly made incident to their lawful arrest.

The Supreme Court first considered the lawfulness of a warrantless search of an automobile more than seventy years ago in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct.

280, 69 L.Ed. 543 (1925). In that case, law enforcement officials had probable cause to believe that a car they observed traveling on a road in Michigan contained illegal liquor. Officers stopped the car, uncovered illegal liquor hidden in the upholstery, seized both the liquor and the car and arrested the occupants. The Court upheld the warrantless search and seizure:

> On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure and valid. The Fourth Amendment is to be construed in the light of what is deemed to be an unreasonable search and seizure when it was adopted and in a manner which will conserve public interests as well as the interests and rights of individual citizens.

267 U.S. at 149, 45 S.Ct. at 283–84.

After *Chimel* was handed down in 1969, some courts and commentators contended

---

**11.** The facts of this case are remarkably similar to those found in *Belton*. In both cases, the police officer's first-hand information led him to suspect that illegal drug activity was afoot and resulted in the arrest of the vehicle occupants for possession of marijuana. In *Belton*, the policeman smelled burned marijuana and saw an envelope on the floor of the car which he suspected contained marijuana. Here, the officer saw burned marijuana roaches in the front ashtray of the vehicle and when he asked the driver about the "Zig–Zag" rolling papers that were situated on the speedometer console and next to a pack of manufactured cigarettes, received a suspicious response. Like the defendant in *Belton*, Bald Eagle at no time has challenged the validity of her arrest. While not altogether clear from the evidence and testimony adduced, the tribal officers may have lacked the requisite probable cause to arrest Bald Eagle on the tribal marijuana possession charge. *See* 2 LaFave, § 3.6(b) at 289–306. Indeed, it is questionable whether passengers situated in the back seat of a car can be arrested for possessing marijuana found in an ashtray located between the front instrument panel and the glove compartment. *Id.* at n.n. 87–89, at 304–05. Yet, Bald Eagle has never claimed or argued this to be so, and apparently concedes, just as the defendants in *Belton* and *Gustafson* did, *see* 453 U.S. at 460, 101 S.Ct. at 2864; 414 U.S. at 266–67, 94 S.Ct. at 492–93 (Stewart, J., concurring), that her custodial arrest (immediately following the discovery of the

marijuana roaches) was valid and that the incidental search of her person was also valid.

Even assuming otherwise, the marijuana and cash taken from Bald Eagle was found during a search of her purse, not her person, and was properly seized under *Belton*. *See United States v. Morales*, 923 F.2d at 622–23, 626–27. In addition, it appears that these items would have been ultimately or inevitably discovered either as a result of the investigative process already in progress at the time or pursuant to the standardized procedures or established routine utilized by police officers in like circumstances. *See Nix v. Williams*, 467 U.S. 431, 440–50, 104 S.Ct. 2501, 2507–12, 81 L.Ed.2d 377 (1984); *see also, United States v. Halls*, 40 F.3d 275 (8th Cir.1994) (drugs found incident to illegal traffic stop of car would have inevitably been discovered, as Iowa authorities aware of car's exact travel route, were waiting there and had valid search warrant for the vehicle), *cert. denied,* —— U.S. ——, 115 S.Ct. 1721, 131 L.Ed.2d 579 (1995); *United States v. McConnell*, 903 F.2d 566 (8th Cir.1990) (illegal search, incident to arrest, of briefcase in motel room where defendant arrested; evidence admissible as "search of the briefcase would have been inevitable pursuant to … police policy of inventorying the contents of seized baggage belonging to arrested persons"), *cert. denied,* 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *see generally,* 5 LaFave § 11.4(a) at 240–53.

that *Carroll* could not be invoked to uphold searches made of a vehicle once both the arrestee and the vehicle were in police custody. The Court, in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), rejected this contention.

In *Chambers,* the defendant was an armed robbery suspect whose station wagon was stopped by police within an hour after the robbery, based on information provided by eyewitnesses. The station wagon was driven to the police station, where it was thoroughly searched without a warrant and incriminating evidence found. The Court upheld the search despite the fact that, since the station wagon was in police possession, the warrant could have been procured without endangering the preservation of evidence:

> On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits the seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.

399 U.S. at 52, 90 S.Ct. at 1981–82.

The next year, the Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), distinguished *Chambers* and invalidated a vehicle search. In doing so, Justice Stewart, writing for a plurality of the Court, noted that "the police had known for some time of the probable role of the Pontiac car in the crime" and that the defendant "already had ample opportunity to destroy any evidence he thought incriminating." 403 U.S. at 460, 91 S.Ct. at 2034–35. Because a warrant could have been obtained in advance, said the Court, no "exigent circumstances" were present which would have justified the warrantless search and seizure of the car at the defendant's house. The Court thus concluded that *Chambers* did not apply since "that case held

only that, where the police may stop and search an automobile, ... they may also seize it and search it later at the police station." 403 U.S. at 463, 91 S.Ct. at 2036–37.

Three years later, the Court, in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) left little doubt that the rationale for its *Chambers* decision could be explained in exigencies arising out of the "movable" character of the particular vehicle at issue. The defendant Lewis, a murder suspect, was asked to come to the police station for questioning. The police had developed probable cause for Lewis' arrest and probable cause that his vehicle was used in the commission of the murder itself. Shortly after his arrival, Lewis was arrested on a warrant issued earlier that day. The police then had his car towed in from a nearby commercial parking lot and placed in a police impoundment lot. The following day, a police technician took paint scrapings from the exterior of the car. Writing for only four members of the Court, Justice Blackmun took up the claim that the warrantless seizure of the car was not justified by exigent circumstances because probable cause existed for some time prior to the arrest and seizure of the car:

> Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. ... The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

417 U.S. at 595–96, 94 S.Ct. at 2471–72.

Then came *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) where defendant was arrested attempting to pass fraudulent checks at the drive-in window of a bank. Following his arrest, the defendant's

car was driven to the station where it was searched about an hour later. During the search, an officer discovered more wrinkled checks that corresponded to those the defendant had attempted to pass at the bank. The Court, in a brief *per curiam* opinion, held that the search of the car was lawful under *Chambers,* thereby indicating that a majority of the Court had accepted the view that whenever a warrantless search of a vehicle would be permissible at the scene, police could instead seize the car and search it later at the police station without first obtaining a warrant. As the Court observed in *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982):

> It is thus clear that the justification to conduct a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with during the period required for the police to obtain a warrant.

458 U.S. at 261,[12] 102 S.Ct. at 3080–81.

The Supreme Court, in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), passed on when and under what circumstances police officers may conduct a probing search of compartments and containers within a vehicle whose contents are not in plain view. In *Ross,* the police acted on a tip received from an informant that a defendant was selling narcotics kept in the trunk of his car. The informant gave a description of both the seller and the car. The police subsequently located the car, stopped it and arrested the driver, who matched the informant's description. The officer then opened the trunk of the car and found a closed paper bag. The officer opened the bag and discovered several glassine bags containing a white powder, which

was later determined to be heroin. The officer then drove the car to headquarters, where another warrantless search of the trunk revealed a zippered leather pouch containing cash. The Court held that "the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant," so that if "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. at 825, 102 S.Ct. at 2173.

In discussing the *Carroll* rule, the majority observed that on at least two occasions[13] it "sustained warrantless searches of containers found during a lawful search of an automobile." *Id.* at 818–19, 102 S.Ct. at 2169–70. The Court also pointed out that in *Carroll* it approved the tearing open of upholstery to find illegal liquor and in *Chambers* upheld a warrantless search that extended to the compartment under the vehicle's dashboard. 456 U.S. at 818–19, 102 S.Ct. at 2169–70. Believing that the searches before it were legally indistinguishable from those allowed in *Carroll* and *Chambers,* the Court reasoned as follows:

> It would be illogical to assume that the outcome of *Chambers*—or the outcome of *Carroll* itself—would have been different if the police had found secreted contraband enclosed within a secondary container and had opened that container without a warrant. If it was reasonable for prohibition agents to rip open the upholstery in *Carroll,* it certainly would have been reasonable for them to look into a burlap sack stashed inside; if it was reasonable to open the concealed compartment in *Chambers,* it would have been equally reasonable to open a paper bag crumpled within it. A contrary rule would produce absurd results

---

**12.** In *Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984), the Court, relying on *Chambers* and *Thomas,* held that the lower court erred in concluding that a warrantless search of a car was improper even though the car had been impounded for eight hours, was stored in a secured area at the time of the search and had been initially searched at the time of the defendant's arrest.

**13.** *Scher v. United States,* 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938) ("packages wrapped in brown paper, and tied with twine," found in trunk of car); *Husty v. United States,* 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931) ("whiskey bags" found in car).

inconsistent with the decision in *Carroll* itself.

\*　　\*　　\*　　\*　　\*　　\*

As we have stated, the decision in *Carroll* was based on the Court's appraisal of practical considerations viewed in the perspective of history. It is therefore significant that the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container.

*Id.* at 818, 820, 102 S.Ct. at 2169–70. The Court then went on to note as follows:

The practical considerations that justify a warrantless search of an automobile continue to apply until the entire search of the automobile and its contents has been completed. Arguably, the entire vehicle itself (including its upholstery) could be searched without a warrant, with all wrapped articles and containers found during that search then taken to a magistrate. But prohibiting the police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened, the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle; thus in every case in which a container was found, the vehicle would need to be secured while a warrant was obtained. Such a requirement would be inconsistent with the rationale supporting the decisions in *Carroll* and *Chambers*.

*Id.* at 821, n. 28, 102 S.Ct. at 2170–71 n. 28.

Several years later, the Court, in *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), decided to combine the mobility and diminished privacy theories of its prior decisions in upholding the warrantless search of a motor home. There, a Drug Enforcement Administration (DEA) agent, who had information that the defendant's mobile home was being used to exchange marijuana for sex, watched the defendant approach a youth and accompany the youth to the motor home, which was parked in downtown San Diego. Other agents then kept the motor home under surveillance, while the defendant and the youth remained inside. When the youth left the motor home, the agents followed and stopped him. The youth told the agents that he had received marijuana in return for allowing the defendant sexual contacts. At the agents' request, the youth returned to the motor home, knocked on its door; the defendant stepped out. Without a warrant or consent, one agent then entered the motor home and observed marijuana. A subsequent search of the motor home at the police station revealed additional marijuana and the defendant was subsequently charged and convicted in California state court. The Supreme Court reversed the California Supreme Court and upheld the search. The Court began by assaying its prior automobile exception cases, noting, among other things, that "the capacity to be 'quickly moved' was clearly the basis of the holding in *Carroll*, and had been consistently recognized . . . as one of the principle bases of the automobile exception" in such later cases as *Chambers, Cardwell* and *Ross*, but was no longer "the only basis for the exception." 471 U.S. at 390–91, 105 S.Ct. at 2068–69. According to the Court, "[b]esides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Id.* at 391, 105 S.Ct. at 2069. "These reduced expectations", the Court explained, "derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways." *Id.* at 392, 105 S.Ct. at 2069. Thus, the Court observed that:

When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationery in a place not regularly used for residential purposes—

temporarily or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable. *Id.* at 392–93, 105 S.Ct. at 2069–70.

Any lingering doubts that remained about the validity of delayed vehicle searches at the police station were all but put to rest by the Supreme Court's decision in *United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). In that case, customs officers stopped two trucks they suspected of carrying marijuana. After arresting certain of the defendants, the officers took the trucks back to DEA headquarters and the packages were then placed in a DEA warehouse. Three days after the packages were seized from the trucks, government agents, without obtaining a search warrant, opened some of the packages and took samples later proved to be marijuana. In upholding the search, the Court rejected the suggestion that searches of containers discovered in the course of a vehicle search "are subject to temporal restrictions not applicable to the vehicle search itself." 469 U.S. at 485, 105 S.Ct. at 885–86. The Court in *Johns* stressed that the later search, even though three days after the initial seizure of the truck and packages, was permissible because it constituted no greater intrusion upon possession or privacy than a search conducted at the time of the initial seizure, which was plainly allowable under the Court's prior precedent. *Id.* at 487–88, 105 S.Ct. at 886–88.

The Supreme Court's *Carroll* through *Johns* line of cases, provide ample authority and justification for the warrantless search conducted by tribal officers of McKibben's vehicle at the Law Enforcement Center. *See United States v. Chaidez,* 906 F.2d 377, 385 (8th Cir.1990); *see also, United States v. Caves,* 890 F.2d 87, 92, n. 4 (8th Cir.1989). The officers had probable cause to search the vehicle both at the scene and at the Law Enforcement Center. The fact that the subsequent search at the Center was conducted some time after the on-the-scene arrest and search is of no consequence. So too is the notion that the officers, by virtue of having already secured McKibben's vehicle and taken custody of it, could have easily procured a warrant prior to commencing their search. These cases, when read together and in their historical progression, demonstrate that the officers were well within the bounds of their authority when they conducted their post-arrest search of McKibben's vehicle at the Center. Accordingly, McKibben's and Bald Eagle's Suppression Motion should be denied on this ground as well.[14]

---

**14.** It may also be the case that the warrantless search of the vehicle at the Law Enforcement Center was permissible as an inventory search under *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (inventory search of auto impounded for over-parking to protect owner's property); *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (inventory search of auto on the highway after impoundment); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (warrantless search of shoulder bag as part of routine inventory search at station of person under lawful arrest was valid; the fact that less intrusive means existed such as sealing the bag, did not make search unreasonable); *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (inventory search of closed container in impounded vehicle did not violate Fourth Amendment even though less intrusive measures might have been available to achieve the purposes of the inventory so long as it was conducted under standardized police procedures requiring such opening and was not in bad faith or done for the sole purpose of investigation; the fact that a vehicle was taken to a secured, lighted area or the owner could have made other arrangements did not make the search unreasonable); and/or *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (where there is no established policy relating to the opening of containers in an inventory search, no containers may be opened; *dicta,* however, suggests that policy need not be an all-or-nothing one and that a police officer may be allowed some latitude to determine whether a particular container should or should not be opened). The record, however, does not clearly reflect that tribal officers searched the vehicle pursuant to standardized procedures adopted for doing so and for this reason this Court is unable to determine for sure whether a proper inventory search of McKibben's vehicle was in fact conducted.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing and in accordance with 28 U.S.C. § 636(b)(1), this Court concludes that the warrantless searches of McKibben's vehicle, McKibben and Bald Eagle's persons and their belongings, as well as the warrantless seizures of contraband and incriminating evidence therefrom, were reasonable and complied with Fourth Amendment strictures. Accordingly, the Court recommends that McKibben and Bald Eagle's Joint Motion to Suppress Evidence, Docket No. 19, be DENIED in all respects.

Dated this 29th day of March, 1996 at Pierre, South Dakota.

## NOTICE

Failure to file written objections to the within and foregoing Findings of Fact, Report and Recommendations for Disposition within ten (10) days from the date of service shall bar an aggrieved party from attacking such Findings, Report and Recommendations before the assigned United States District Judge. *See* 28 U.S.C. § 636(b)(1)(B).