**UNITED STATES of America, Appellee,**

v.

**James L. HATTEN, Appellant.**

**No. 95–1775.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Oct. 19, 1995.

---

Mary Heise Buckley, argued, Omaha, NE, for appellant.

Jan W. Sharp, argued, Omaha, NE, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and McMILLIAN, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

James L. Hatten pleaded guilty to one count of being a felon in possession of a firearm shipped in interstate commerce, a violation of 18 U.S.C. §§ 922(g) and 924(a)(2). He was sentenced to twenty-one months' imprisonment. Hatten reserved the right to appeal the District Court's[1] denial of his motion to suppress. First, the defendant contends that Omaha police officers lacked "prior justification," required under the plain-view doctrine, to seize evidence from his car. Next, he claims that an officer interrogated him before giving the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and so the District Court should have suppressed his statements. We affirm the District Court's denial of the motion to suppress.

I.

On May 21, 1994, Omaha Police Officer Fred Pfeffer was moonlighting as a security officer at the Orange Weasel, a now-defunct Omaha night spot. At 9:30 or 10:00 p.m., Officer Pfeffer saw a car occupied by two men pull into the Orange Weasel's front parking lot and then drive around to the back of the club. He went around back and did not see the car, so he returned to the front and saw the car, parked. Officer Pfeffer watched as the men talked for a few minutes inside the car, and then he saw the driver reach into his waistband. The driver was the defendant, James Hatten, and his companion was Melvin Chinn.

The two men got out of the car, but instead of going into the Orange Weasel, they started down the street. Due to a spate of crimes in the area, Officer Pfeffer was suspicious. With the help of his flashlight, he looked in the car's driver-side window and saw the barrel of a handgun sticking out from under the driver's seat. He told Orange Weasel employees to call "911" for backup and to report a parked car with a handgun inside. Then, the defendant and Chinn returned to the parking lot.

Officer Adam Kyle received a radio call about the parked car at the Orange Weasel. He arrived at the scene and, as he pulled into the parking lot, saw the two men walking towards the car. Officer Kyle saw the defendant hand something—later determined to be the car's keys—to Chinn and, at the same time, saw Officer Pfeffer gesture towards the two men. Officer Kyle took cover behind the car, pulled his weapon, and told the defendant and Chinn to put their hands on the car. Chinn did so, but, according to Officer Kyle, the defendant talked back and acted in a belligerent and nervous fashion. The defendant, however, complied after Officer Kyle threatened to "blow his head off" if he did anything dangerous.

Officer Pfeffer obtained the car keys and opened the driver-side door. He retrieved the gun, which was loaded, and also found a

---

1. The Hon. William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska, acting on the recommendation of the

Hon. Kathleen Jaudzemis, United States Magistrate Judge for the District of Nebraska.

small bag of marijuana behind the driver's seat. Officer Kyle asked the defendant his name, address, date of birth, and about the ownership of the car, and then took him to the Omaha Police Department headquarters. During the ride to headquarters, Officer Kyle and the defendant discussed the fate of the car, and Officer Kyle learned through a radio check that the defendant was a felon. Officer Kyle did not administer *Miranda* warnings, either at the Orange Weasel or in the car.

At headquarters, the defendant was left in an interview room. Officer Kyle obtained the defendant's written criminal history, and joined the defendant in the room. The defendant asked about the charges against him, and Officer Kyle said he would be charged with carrying a concealed weapon and being a felon in possession of a firearm, showing the defendant his criminal history. The defendant then asked something to the effect of "[w]hat if a guy had the gun for protection?" He explained that he had been shot before and was "paranoid" as a result, and that the gun was for his own protection. The defendant also admitted that the marijuana was his, and insisted that Chinn was "a clean kid." Officer Kyle testified that he did nothing to stop the defendant from talking. After the defendant's comments, Officer Kyle went across the hall and spoke briefly with Mr. Chinn. He then returned to the interview room and read the defendant his *Miranda* rights. The defendant said that he did not want to talk to Officer Kyle, so they both left the interview room and the defendant was booked.

The defendant filed a motion to suppress, claiming that Officer Pfeffer lacked "prior justification" to seize evidence from the car. He also moved to suppress the statements he made to Officer Kyle, pointing to the officer's failure to read the *Miranda* rights before interrogating him. The magistrate judge recommended that the District Court deny the defendant's motion. The District Court adopted the magistrate judge's report, and denied the motion.

## II.

■ The Fourth Amendment to the United States Constitution guarantees the right "to be secure in [our] persons, houses, papers, and effects, against unreasonable searches and seizures." The touchstone of the Fourth Amendment's promise is "reasonableness," which generally—though not always—translates into a warrant requirement. *Vernonia School Dist. 47J v. Acton,* —— U.S. ——, —— - ——, 115 S.Ct. 2386, 2390–91, 132 L.Ed.2d 564 (1995).

■ The plain-view doctrine permits law enforcement officers to seize evidence without a warrant if "(1) 'the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,' (2) the object's incriminating character is immediately apparent, and (3) the officer has a 'lawful right of access to the object itself.'" *United States v. Hughes,* 940 F.2d 1125, 1126–27 (8th Cir.) (quoting *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990)), *cert. denied,* 502 U.S. 896, 112 S.Ct. 267, 116 L.Ed.2d 220 (1991). The defendant claims that Officer Pfeffer failed to meet the doctrine's first requirement, that is, "prior justification." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

■ According to the defendant, Officer Pfeffer had nothing more to go on when he looked into the car than that he saw two African–American males arrive at a popular nightspot, park, and talk; he saw one of them move his hand toward his waistband; and he watched them walk up the street toward another business. Because there are plenty of perfectly innocuous explanations for this conduct, the defendant insists that Officer Pfeffer had no right to look in the car window. We disagree. "Prior justification" does not mean probable cause, or even reasonable suspicion that crime is afoot. "All that is required is that at the time the officers observed the weapon in the car, they must have had a right to be in close proximity to the car at a point from which the observation occurred." *United States v. Webb,* 533 F.2d 391, 394 (8th Cir.1976).

■ The defendant and Chinn left the car in the parking lot of a private nightclub.

The proprietors of the Orange Weasel, concerned about crime in the neighborhood and the safety of their customers, had retained Officer Pfeffer to keep an eye on the lot. Officer Pfeffer was therefore justified in patrolling the parking lot. Furthermore, his looking through the defendant's car window did not violate the Fourth Amendment. "[A] truly cursory inspection—one that involves merely looking at what is already exposed to view, . . .—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." *Arizona v. Hicks,* 480 U.S. 321, 328, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987). Officer Pfeffer's conduct was not a "search" because a person who parks a car—which necessarily has transparent windows—on private property does not have a reasonable expectation of privacy in the visible interior of his car. *Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (opinion of Rehnquist, J.). Officer Pfeffer's actions were not unconstitutionally curious; if an item is in plain view, looking at it invades no privacy interests. *Horton,* 496 U.S. at 133–34, 110 S.Ct. at 2306 (citing *Hicks,* 480 U.S. at 325, 107 S.Ct. at 1152–53). It does not matter that Officer Pfeffer used a flashlight. *United States v. Garner,* 907 F.2d 60, 62 n. 2 (8th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991); *Brown,* 460 U.S. at 739–40, 103 S.Ct. at 1541–42. The windows were tinted, and the officer needed a flashlight to see inside, but that does not matter either. The windows were still transparent.

■■■■ The defendant has not argued that the officers did not meet the plain-view doctrine's other two requirements, and we think they were satisfied. The "immediately apparent" requirement means that officers must have "probable cause to associate the property with criminal activity." *Garner,* 907 F.2d at 62 (citing *Brown,* 460 U.S. at 741, 103 S.Ct. at 1543); *Minnesota v. Dickerson,* —— U.S. ——, ——, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). And, "[p]robable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a

crime.'" *Garner,* 907 F.2d at 62 (quoting *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543). Officer Pfeffer saw the barrel of a gun sticking out from under the seat. Hidden guns, even badly hidden guns, are by their nature incriminating. *Hughes,* 940 F.2d at 1127 (noting that the "incriminatory nature of [a] gun and cocaine was immediately apparent"); *United States v. Wilson,* 524 F.2d 595, 598 (8th Cir.1975) (incriminating nature of six inches of gun barrel was immediately apparent), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976).

Additionally, an Omaha ordinance prohibits most carrying of "concealable" weapons inside motor vehicles, Omaha, Neb., Mun. Code § 20–206(b) (as amended 1993), and a Nebraska statute outlaws carrying concealed weapons. Neb.Rev.Stat. § 28–1202(1) (Reissue 1989). In this case, the gun was either sloppily concealed, or concealable; either way, the gun's incriminating character was immediately apparent, and Officer Pfeffer had probable cause to believe it was contraband. All the plain-view doctrine's requirements were met in this case, and the warrantless seizure of the evidence was justified. See *United States v. Kalter,* 5 F.3d 1166, 1168 (8th Cir.1993) (warrantless seizure of a gun, following a routine traffic stop, was justified under the plain-view doctrine); *United States v. Willis,* 37 F.3d 313, 316–17 (7th Cir.1994) (warrantless seizure of gun from defendant's car justified under plain-view doctrine).

### III.

■■■■ The defendant's next argument is that the District Court should have suppressed his statements to Officer Kyle. The *Miranda* protections are triggered only when a defendant is both in custody and being interrogated. *United States v. Lawrence,* 952 F.2d 1034, 1036 (8th Cir.), *cert. denied,* 503 U.S. 1011, 118 L.Ed.2d 434 (1992). "Interrogation" is "express questioning," or words or actions "that the police should know are reasonably likely to elicit an incriminating response. . . ." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980); *Lawrence,* 952

F.2d at 1036. We agree with the District Court that the defendant's statements about the gun were both voluntary and volunteered, and not the product of police interrogation.

■ The defendant was in custody when he made the statements, but not all statements made while in custody are products of interrogation. *Innis,* 446 U.S. at 299, 100 S.Ct. at 1689; *Lawrence,* 952 F.2d at 1036. We have repeatedly held that "[a] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." *Id.* at 299, 100 S.Ct. at 1689; see also *United States v. Griffin,* 922 F.2d 1343, 1356–57 (8th Cir. 1990); *United States v. Webster,* 769 F.2d 487, 491–92 (8th Cir.1985). The defendant argues that his statements were coerced because, back at the Orange Weasel, Officer Kyle threatened to "blow [the defendant's] head off," and because he put the defendant in a small basement interview-room with only a table and two or three chairs. We disagree. While the defendant's experience may have been harrowing, this experience and the atmosphere at headquarters were not compelling or coercive. See *United States v. Layne,* 973 F.2d 1417, 1420 (8th Cir.1992) (*Miranda* warnings not necessary before general questioning unless there is a "compelling atmosphere of custodial interrogation"). Coercive government activity is necessary to prove that a statement was not voluntary. *Layne,* 973 F.2d at 1421; *Colorado v. Connelly,* 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473 (1986).

Not only were the statements voluntary, but they were volunteered. The defendant initiated the exchange: he asked what he was charged with, and Officer Kyle answered. The defendant asked why, and Officer Kyle told him. The defendant then asked about having a gun for "protection," Officer Kyle said that it "depends on the situation," and the defendant then told about his previous run-in with gunplay. This was not "interrogation." In *Lawrence,* when a defendant volunteered that he had thrown away a gun while fleeing the police and that "[he did not] want some little kids to find it,"

we held that this statement was not the product of "interrogation." *Lawrence,* 952 F.2d at 1035–36; see also *Kalter,* 5 F.3d at 1168–69 (voluntary statement about gun during traffic stop was spontaneous and not the product of interrogation); *United States v. Waloke,* 962 F.2d 824, 828–29 (8th Cir.1992) (defendant's spontaneous statements during ride to jail were voluntary, not the products of interrogation, and did not require *Miranda* warnings); *United States v. Lenfesty,* 923 F.2d 1293, 1299 (8th Cir.) (officer's off-hand response to defendant's assertion that he would "beat [the] charges" did not trigger *Miranda* ), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991). The defendant's statements were voluntary, not the products of custodial interrogation, and so the District Court did not err in denying the defendant's motion to suppress.

IV.

For these reasons, we affirm the District Court's order denying the defendant's motion to suppress.