_____

No. 95-2183
_____

Wesley Brayman, Debra Brayman,  *
                                 *
          Plaintiffs-Appellees,  *  Appeal from the United States
                                 *  District Court for the
     v.                          *  Southern District of Iowa.
                                 *
United States of America,        *
                                 *
          Defendant,             *
                                 *
Mark Shepherd,                   *
                                 *
          Defendant-Appellant.   *


_____

Submitted:  March 11, 1996

Filed:  September 4, 1996
_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
_____


PER CURIAM.

     Deputy United States Marshal Mark Shepherd appeals the district court's partial denial of qualified immunity on three <u>Bivens</u> claims arising out of his participation in the execution of a forfeiture warrant.  <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) (allowing cause of action against federal officers for violating the Fourth Amendment).  We conclude that Shepherd was entitled to qualified immunity on these claims.  Accordingly, we reverse the judgment of the district court.

Wesley and Debra Brayman were living on rented property that became subject to a forfeiture order in May 1988. The forfeiture complaint alleged that the owners of the property, Michael and Michelle Landon, acquired it with the proceeds of unlawful drug transactions and that the property was used to facilitate unlawful drug transactions, rendering it subject to forfeiture under 21 U.S.C. § 881(a). The district court entered an order for a writ of monition on June 3, 1988, directing that the property be seized and that notice be given to the owners of the property.

Deputy Marshal Shepherd and several other law enforcement officers, including a special agent of the FBI, executed the warrant of seizure and monition for the property on June 21, 1988. The FBI also had a separate seizure warrant issued by a United States Magistrate Judge, for the same property which was executed contemporaneously. The officers were aware that Wesley Brayman, a resident of the home, was a felon previously convicted of a crime of violence. The officers also knew that the property was allegedly being used to facilitate drug trafficking crimes, "that the house was alarmed[,] and that dogs were roaming the grounds." (App. at 92.) However, the officers were also aware that this was a civil forfeiture proceeding and that their purpose was to execute the warrants and conduct an inspection of the property, not conduct a criminal investigative search.

When the officers arrived to execute the seizure warrants, they knocked at the door and were initially denied entrance. After waiting several minutes and determining that the occupants were not going to allow them in, the officers threatened to use force to open the locked door. This prompted Debra Brayman to allow the officers into the house.

The officers served Debra Brayman with the warrants and inspected the property. Deputy Marshal Shepherd made a videotape of the inspection to record the condition of the property in compliance with the United States Department of Justice Seized Asset Management Handbook. During the inspection, the officers observed several firearms in an open master bedroom closet containing men's clothes. There is a dispute over who owns the firearms and whether Debra consented to their seizure. According to Shepherd, Debra told him the firearms belong to her husband, Wesley Brayman. Debra's affidavit states that she owns the firearms, and she denies making any statement that they belong to her husband. Shepherd claims that after they discovered the firearms, he contacted an Assistant United States Attorney, who advised that they should give the guns to the Bureau of Alcohol, Tobacco, and Firearms (BATF) if Debra would voluntarily release them. Shepherd claims that, with Debra's consent, he seized the firearms and provided them to BATF agents. Debra Brayman denies giving her consent.

The officers placed seizure notices on the property and presented Debra Brayman with a document entitled "Stipulation of Occupancy," which allowed the Braymans to remain on the seized property for a period of six months after the seizure. There is a dispute over the circumstances under which Debra signed the agreement. She claims she was forced to sign because the officers told her she must either sign the agreement or be evicted. Shepherd says he advised her to consult her husband before signing, and when Debra asked about the consequences of refusing to sign, he told her he would have to advise the United States Attorney and recommend that they institute proceedings to remove them from the property.

By the end of June 1988, officers believed that the property had been abandoned. Shepherd's office received reports of cruelty to animals living on the property, and during another inspection,

he observed livestock loose on the property.  On advice of the United States Attorney, Shepherd reported the information concerning the welfare of the animals to the local authorities.  Debra disputes the truth of this report, insisting that her husband was taking good care of the livestock and that the Animal Control Officer for Pottawattamie County could testify to the good condition of the animals and the property.

In July 1988, the Braymans filed a counterclaim in the forfeiture action, alleging violations of the United States and Iowa constitutions. Subsequently, Wesley Brayman and Michael Landon were indicted as coconspirators in the distribution of cocaine, and Wesley Brayman pled guilty.  Braymans' counterclaim was severed from the forfeiture action (which is now closed) and became this separate case.  Among other things, the complaint alleged the following Bivens claims against Shepherd:  The law enforcement officers entered the property with firearms drawn, unlawfully detained Debra, forced Debra to sign the occupancy agreement, unlawfully searched and seized personal property, made false reports that the Braymans were being cruel to their livestock, and denied them preseizure notice and a hearing.

Shepherd sought summary judgment on the ground that he is entitled to qualified immunity from suit.  The district court granted his motion in part, determining that Shepherd was entitled to qualified immunity for his actions of entering the home, for conducting a videotaped structural inventory, for all allegations regarding the unlawful entry and search of the premises and the unlawful detention of Debra Brayman, and for using the threat of force to open the door where he reasonably feared the residents could be arming themselves.  The court concluded that none of these actions violated a clearly established constitutional right.  The district court also granted Shepherd qualified immunity on the Braymans' due process claim, concluding that no preseizure notice

4

or hearing requirements existed at the time Shepherd executed the seizure warrant.

The district court denied Shepherd's motion in part as well. The court denied qualified immunity on the claims that he illegally seized the firearms, that Debra Brayman was forced to sign the occupancy agreement, and that Shepherd made false reports that the Braymans were treating their livestock cruelly. On each of these claims, the district court found that conflicting evidence prevented the grant of qualified immunity. Shepherd appeals the district court's partial denial of qualified immunity.

**II.**

We first consider our jurisdiction to decide this appeal. Subject to certain statutory exceptions, our jurisdiction extends only to "final decisions" rendered by a district court. 28 U.S.C. § 1291 (1988); Johnson v. Jones, 115 S. Ct. 2151, 2154 (1995). The Supreme Court has long held that orders collateral to and separable from the rights asserted in the action are immediately appealable as final decisions under § 1291. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). The Court has further held that "a district court's order denying a defendant's motion for summary judgment was an immediately appealable `collateral order' (i.e., a `final decision') under Cohen, where (1) the defendant was a public official asserting a defense of `qualified immunity,' and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of `clearly established' law." Johnson, 115 S. Ct. at 2155 (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)).

Citing Johnson v. Jones, the Braymans contend that we lack jurisdiction over this appeal. In Johnson, the Supreme Court held that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as

5

that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." 115 S. Ct. at 2159. The Court stressed that appellate review of the qualified immunity issue is limited to the purely legal question of "`whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law.'" Id. at 2156 (quoting Mitchell v. Forsyth, 472 U.S. at 528 n.9). Because the trial court denied qualified immunity in this case on the basis that a dispute of material fact existed, and not on the question of clearly established law, the Braymans contend the appeal is without jurisdiction.

We conclude that the Braymans read the holding of Johnson too broadly. The Supreme Court recently clarified the scope of Johnson. See Behrens v. Pelletier, 116 S. Ct. 834 (1996). In Behrens, the appellee asserted, among other things, the same argument asserted by the Braymans: the appeal is without jurisdiction because the denial of qualified immunity rested on the ground that material issues of fact remain. 116 S. Ct. at 842. The Court rejected the argument, explaining as follows:

> Every denial of summary judgment ultimately rests upon a determination that there are controverted issues of material fact, see Fed. Rule Civ. Proc. 56, and Johnson surely does not mean that every denial of summary judgment is nonappealable. Johnson held simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified immunity case . . . .
>
> Here, the District Court's denial of petitioner's summary judgment motion necessarily determined that certain conduct attributed to petitioner (which was controverted) constituted a violation of clearly established law. Johnson permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of "objective legal reasonableness."

6

Id. at 842.

In the present case, the district court determined that material issues of fact remain concerning the three claims for which qualified immunity was denied. However, the district court did so without first expressly considering whether these claims, as alleged, support a violation of clearly established law. See Siegert v. Gilley, 500 U.S. 226, 231 (1991) (holding that the first inquiry in a proper qualified immunity analysis is whether the plaintiff alleged the violation of a clearly established constitutional right). We conclude that we have jurisdiction to consider this question of law with regard to each claim.

**III.**

Government officials are entitled to qualified immunity from civil liability unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See also Prosser v. Ross, 70 F.3d 1005, 1007 (8th Cir. 1995); Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995). "The contours of the right must be clearly established in a particularized sense: `The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Prosser, 70 F.3d at 1007 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). "We review de novo the district court's denial of qualified immunity at summary judgment." Henderson v. Baird, 29 F.3d 464, 467 (8th Cir. 1994), cert. denied, 115 S. Ct. 2584 (1995).

The district court determined that Shepherd was not entitled to qualified immunity on the Braymans' claim that he unreasonably seized firearms during the inventory, because there existed a material dispute of fact concerning whether Debra Brayman consented to the seizure. We conclude that this factual dispute is

7

immaterial to the legal determination of whether the Braymans have alleged the violation of a clearly established right. Even assuming Debra did not consent to the seizure, the remaining undisputed facts demonstrate that Shepherd did not violate a clearly established constitutional or statutory right, because his actions were justified by the plain view doctrine.

The Fourth Amendment to the United States Constitution provides a right to be free from unreasonable searches and seizures, a right that "generally -- though not always -- translates into a warrant requirement." United States v. Hatten, 68 F.3d 257, 260 (8th Cir. 1995), cert. denied, 116 S. Ct. 1026 (1996). One exception to the warrant requirement is the plain view doctrine, which permits law enforcement officers to seize objects in plain view if (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the evidence was in plain view and "its incriminating character [was] immediately apparent," and (3) the officer had a "lawful right of access to the object itself." Horton v. California, 496 U.S. 128, 136-37 (1990). See also Hatten, 28 F.3d at 260.

Shepherd's seizure of the firearms satisfies all three requirements of the plain view doctrine. First, he did not violate the Fourth Amendment by his presence inside the Braymans' home. Shepherd was present to execute a lawful seizure warrant, which required him to inventory the property. The district court properly concluded that Shepherd's conduct of entering and searching the premises was objectively reasonable and did not violate clearly established law.

Second, for the object's incriminating character to be immediately apparent, "the officers must have `probable cause to associate the property with criminal activity.'" Hatten, 68 F.3d at 261 (quoting United States v. Garner, 907 F.2d 60, 62 (8th Cir.

8

1990), cert. denied, 498 U.S. 1068 (1991)). This was the home of Wesley Brayman, known by the officers to be a convicted felon. The firearms were plainly observed through the open door of the master bedroom closet containing men's clothing. These undisputed facts provided the officers with probable cause to believe that the firearms were the object of a crime, because either actual or constructive possession of a firearm by a felon is a violation of 18 U.S.C. § 922(g). See United States v. Koskela, 86 F.3d 122, 127 (8th Cir. 1996) (holding that circumstantial evidence supported a finding of constructive or joint possession sufficient to sustain a § 922(g) conviction); United States v. Boykin, 986 F.2d 270, 274 (8th Cir.), cert. denied, 510 U.S. 888 (1993) (stating that "[c]onstructive possession of the firearm is established if the person has dominion over the premises where the firearm is located"). It is also a violation of Iowa law for a felon to have dominion and control of a firearm. Iowa Code Ann. § 724.26 (West 1993). See State v. Miles, 490 N.W.2d 798, 800 (Iowa 1992) (holding that a jury question was presented where a firearm was found in the defendant's truck). Because ownership is not an element of these crimes, a dispute over ownership does not create a question of material fact to prevent application of the plain view doctrine. The undisputed circumstances demonstrate that the incriminating character of the firearms was immediately apparent.

Third, the inspection did not exceed the scope of what was necessary to execute the lawful warrant. (See App. at 183 (the FBI seizure warrant expressly required an inventory of the property).) It was necessary to inspect the structural integrity of the property, both inside and outside, and the officers were required to take accurate photographs of the interior and exterior of the property. (App. at 161.) The inspection of bedrooms and open closets was well within the scope of the warrant. The officers did not open any closet doors, drawers, or closed containers. Therefore, on the undisputed facts, the officers had lawful right of access to the firearms. See United States v. Hughes, 940 F.2d

9

1125, 1127 (8th Cir.), cert. denied, 502 U.S. 896 (1991). "Because the warrant authorized the officers' search of the places they found the gun[s] . . . and the plain view doctrine authorized the seizure of these incriminating objects," id., the Braymans' allegation that Shepherd unlawfully seized the firearms does not state a violation of a clearly established constitutional right.

## IV.

The district court also determined that Shepherd was not entitled to qualified immunity because issues of fact existed concerning whether Debra Brayman was forced to sign the occupancy agreement and whether Shepherd filed false reports of animal cruelty with local authorities. Again, we conclude that these claims do not allege the violation of a clearly established constitutional right. The property was forfeitable pursuant to 21 U.S.C. § 881(a) and lawfully seized by the government, so the Braymans had no constitutional right to continued occupancy of the property. In this circumstance, a threat of eviction as alleged by Debra Brayman does not state the violation of a clearly established right. Furthermore, it is well established that defamation or injury to reputation by itself does not state a constitutional deprivation. See Siegert, 500 U.S. at 233-34; Paul v. Davis, 424 U.S. 693, 708-12 (1976); Nelson v. City of McGehee, 876 F.2d 56, 58 (8th Cir. 1989). Thus, the Braymans' allegation that Shepherd made false reports to local authorities does not, without some indication of a due process violation, state the violation of a clearly established constitutional right.

## V.

We conclude that because the Braymans failed to allege a violation of a clearly established constitutional right, Shepherd is entitled to qualified immunity on all of their Bivens claims.

10

Accordingly, we reverse the district court's partial denial of Shepherd's motion for summary judgment.  We remand the case to the district court for the entry of an order dismissing with prejudice all of the Braymans' <u>Bivens</u> claims against Deputy Shepherd.

    A true copy.

       Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.