LOKEN, Circuit Judge,
with whom McMILLIAN, WOLLMAN, and MURPHY, Circuit Judges, join, dissenting.
This case aptly illustrates the old adage, “hard cases make bad law.” Faced with a partial trial record revealing an internal investigation that wounded the career and reputation of a police officer ultimately found innocent of the most serious wrongdoing, the court concludes that the officer has viable substantive due process and malicious prosecution claims against his investigators. I conclude, to the contrary, that the district court correctly granted defendants judgment as a matter of law at the close of Sergeant Moran’s case. Accordingly, I respectfully dissent.
I. Substantive Due Process.
The panel reversed the district court on the ground that Moran’s trial evidence raised a jury issue as to “whether the defendants’ conduct was so wrongful as to shock the conscience.” 247 F.3d at 805. We granted rehearing en banc because that ruling reflected two errors of law. First, as Judge Bye’s concurring opinion explains, proof that government misconduct is conscience-shocking does not suffice. To prevail on a substantive due process claim based upon executive action, plaintiff “must demonstrate both that the official’s conduct was conscience-shocking ... and that the official violated one or more fundamental rights that are ‘deeply rooted in this Nation’s history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.’ ” Ante at 651, quoting Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S.Ct. 2258 (1997). Second, whether the conduct was “so wrongful as to shock the conscience” is not a jury question. To ensure that substantive due process does not become a “font of tort law,” County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the government misconduct at issue “must ‘shock the conscience’ of federal judges.” Collins v. City of Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).
A. Fundamental Protected Rights. The Supreme Court in Lewis said that “the threshold question” in a substantive due process case is whether the conduct at issue shocks the conscience. 523 U.S. at 847 n. 8, 118 S.Ct. 1708. But in Lewis, plaintiffs’ fundamental interest was clear— their decedent had died in a high-speed police chase. The issue was the standard by which the pursuing police officers’ conduct should be measured. Because context is so important to due process analysis, I think it useful in this case to focus first on whether Moran has alleged the violation of a fundamental liberty interest which is “objectively, deeply rooted in this Nation’s history and tradition, and implicit in the concept of ordered liberty.”
As the court appears to recognize, proper analysis of this issue must begin with a “careful description of the asserted fundamental liberty interest” at stake. Glucksberg, 521 U.S. at 721, 117 S.Ct. 2258. Moran’s briefs to the panel paid no attention to this issue, relying instead on the erroneous assertion that only conscience- *653 shocking misconduct need be proved. We invited further briefing of the issue in our order granting rehearing en banc. Moran filed a supplemental brief again arguing that proof of conscience-shocking executive conduct, without more, establishes a substantive due process violation. Alternatively, Moran asserted that his “fundamental constitutional liberty in his job and reputation and standing in the community ... is sufficient to invoke substantive due process.”
The difficulty with this contention is that it is contrary to controlling Supreme Court precedent. In Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), no fewer than seven Justices agreed, though on different grounds, that a substantive due process claim will not lie for “prosecution without probable cause,” id. at 271, 114 S.Ct. 807 (plurality opinion), or for “malicious initiation of a baseless criminal prosecution,” id. at 281, 114 S.Ct. 807 (Kennedy, J., concurring). See also Baker v. McCollan, 443 U.S. 137, 142-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Court has repeatedly stated there is no fundamental, historical right to continuing employment as a police officer — “government employment, in the absence of legislation, can be revoked at the will of the appointing officer.” Cafeteria Workers v. McElroy, 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (citing numerous cases); see Bishop v. Wood, 426 U.S. 341, 349-50 & n. 13, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). And this court has agreed with other circuits that “occupational liberty ... is not protected by substantive due process.” Singleton v. Cecil, 176 F.3d 419, 428 (8th Cir.1999) (en banc) (quotation omitted).
In finding a liberty interest protected by substantive due process, the court simply brushes these controlling authorities aside without mention. First, the court relies on a portion of the lead opinion in City of Chicago v. Morales, 527 U.S. 41, 53, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), in which only three Justices joined, ignoring the Court’s explicit statement that its decision was not based on substantive due process grounds. Id. at 64 n. 35, 119 S.Ct. 1849. Next, the court gives a statement in Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)—that the freedom “to engage in any of the common occupations of life” is a liberty interest protected by the Due Process Clause— weight the Supreme Court has expressly said it will not bear. See Conn v. Gabbert, 526 U.S. 286, 291, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); Singleton, 176 F.3d at 426 n. 8 (this liberty interest is “afforded substantive due process protection only when the government completely prohibits, rather than briefly interrupts, a person from engaging in his desired occupational field.”). Then, the court uses procedural due process cases as establishing a fundamental interest in government employ protected by substantive due process. By citing procedural due process cases such as Cafeteria Workers v. McElroy; Board of Regents v. Roth, 408 U.S. 564, 568-70, 92 S.Ct. 2701 (1972); and Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895 (8th Cir.), cert. denied, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994), for the proposition that Moran has a fundamental liberty interest in his employment, the court erroneously equates the property and liberty interests that entitle a public employee to procedural due process — interests frequently established by state law — with the fundamental liberty interests required to trigger substantive due process protection. The Supreme Court treats the two liberty concepts as distinct, with the substantive due process concept being far narrower. See Harrah Ind. Sch. Dist. v. Martin, 440 U.S. 194, 197-98, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979); Paul v. *654 Davis, 424 U.S. 693, 710-13, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Roth, 408 U.S. at 573 n. 12, 92 S.Ct. 2701. Likewise, the court’s reference to an employee’s right “to be free from an employer’s stigmatizing conduct” is insufficient. While marring a public employee’s reputation or standing in the community may trigger a procedural due process right to name-clearing process, “it is well established that defamation or injury to reputation by itself does not state a constitutional deprivation.” Brayman v. United States, 96 F.3d 1061, 1066 (8th Cir.1996).
Finally, attempting to locate a fundamental liberty interest where none is to be found, the court introduces possible racial bias by Chief Henderson into the equation, when Moran neither pleaded an equal protection claim nor alleged in his complaint that any defendant’s conduct was racially motivated. It is improper for an appellate court to reverse the dismissal of claims because the evidence might have supported an unpleaded claim. Moreover, the court’s analysis is flawed on its merits. The court cites testimony by Richard Barry, one of Moran’s attorneys, that Henderson said during a meeting, “I want the white sergeant.” Not only did Chief Henderson deny making the statement, but Andrew Leonard, an attorney present at the meeting representing other police officers under investigation, was called as a witness for Moran and testified on cross and redirect examination:
Q [by defense counsel]. Did you ever hear [Chief Henderson] say I want the white sergeant.
A. I don’t remember. I don’t remember that.
Q [by counsel for Moran]. Let me clarify one point real quickly, you testified under cross-examination that you didn’t hear the chief say white sergeant. You didn’t remember hearing the chief?
^ * i'.i # # *
A. I recall Sergeant Moran was clearly identifiable, whether it was by name or by descriptive term. I don’t remember there being a racial overtone to it.
Q. Everyone in the room knew that the chief meant Moran, correct?
A. Yes. Yes.
In my view, if an African-American police chief said, “I want the white sergeant,” in a meeting held under these circumstances, an attorney for police officers under active investigation for alleged use of excessive force against a mentally-impaired citizen would surely recall that statement. The rule that we must view evidence in the light most favorable to Moran does not warrant manufacturing an unpleaded claim of reverse race discrimination from one scrap of testimony that has little or no credibility. We may only draw reasonable inferences in favor of a nonmoving party. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Moreover, even if Henderson made the statement, in light of attorney Leonard’s testimony it is pure speculation to infer that racial prejudice improperly motivated the chiefs conduct. A “reasonable inference” is “one which may be drawn from the evidence without resort to speculation.” Fought v. Hayes Wheels Intern., Inc., 101 F.3d 1275, 1277 (8th Cir.1996) (quotation omitted).
In summary, Moran tried the case and the panel decided his appeal on the mistaken assumption that proof of conscience-shocking misconduct establishes a substantive due process violation. The en banc court now fails in its belated attempt to find a fundamental historical interest entitled to substantive due process protection under Supreme Court precedents and this court’s decision in Singleton. Therefore, I *655 would affirm the dismissal of Moran’s substantive due process claim on this ground.
B. Shocks the Conscience. To violate substantive due process, the misconduct of government officials that violates a citizen’s fundamental rights must be “so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience” of federal judges. Lewis, 523 U.S. at 847, n. 8, 118 S.Ct. 1708. In adopting the conscience-shocking standard, the Court explained that it “duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law’s spectrum of culpability.” Id. at 848, 118 S.Ct. 1708. The Court also emphasized that substantive due process, like procedural due process—
is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.
Id. at 850, 118 S.Ct. 1708, quoting Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). Applying this standard, I conclude defendants’ individual and collective conduct was not conscience-shocking in the constitutional sense. The following is a brief chronological review of undisputed facts established by Moran’s case-in-chief at trial.
• On April 14, a mentally-impaired teenager was seriously injured in his own home while resisting arrest by two police officers who mistook him for a burglar.
• Responding to witness allegations of an abusive police beating, and repeated inquiries from the media, when Chief Henderson learned that Gregory Bell was mentally challenged and not a burglar, he publicly apologized to the family for the mistake. The court finds it shocking that Chief Henderson publicly apologized for the beating of a young, mentally-impaired citizen being arrested as a burglar in his own home. Given the potential for civil unrest inherent in such an incident, it would be more shocking if the Chief of Police of a major city had not responded in this manner. The court further concludes that Moran’s evidence “tends to show a police department that publicly and financially committed itself to producing a culprit for an alleged wrongdoing before any such wrongdoing was actually established.” Ante at 647. Here is the relevant testimony:
Q [by counsel for Moran], You apologized for the police department to that family and you promised that you would find out who was the wrongdoer and punish him, didn’t you do that, Chief?
A. No, what I recall is I promised that we would do a thorough, efficient and effective investigation and if there was any wrongdoing we would take the appropriate action is what I said.
• Chief Henderson then involved himself personally in the ensuing Internal Affairs investigation. Though no doubt unusual, it is hardly “questionable” for a department head to become personally involved in a high-profile investigation into police misconduct.
• In the first week after the incident, Officer Booker submitted a police report that did not place Moran at the scene until Bell was brought outside the home. All officers interviewed by the Internal Affairs investigators gave statements consistent with this report.
• On April 19, Chief Henderson learned that Officer Barry Greene wished to make a statement contradicting the police report. Henderson and Internal Affairs officials met with Greene and heard him im *656 plicate Moran in the beating of Gregory Bell. Henderson and the others then took Officer Greene to Circuit Attorney Dee Joyce-Hayes, who heard Greene’s statement and took the matter to a grand jury, which returned an indictment against Moran.
• After hearing Greene’s contrary statement, Chief Henderson told attorneys Barry and Leonard he- did not believe the police report and the officers’ initial statements corroborating that report. Henderson advised the attorneys that any officer who told the truth in a second statement would not be disciplined if it contradicted his initial statement. Officer DuPree, who had previously admitted to attorney Leonard that his initial statement was untruthful in some respects, then gave a second statement placing Moran at the scene during the melee but not hitting Bell. Tfie court describes this as evidence of “pressures placed on officers to incriminate a specific person or corroborate the department’s official line.” Ante at 648. The tactics strike me as entirely appropriate probing by investigators faced with conflicting statements. Significantly, every police officer who testified at trial said he was repeatedly told to tell the truth, was not told what to say by any investigator or defendant, and did not feel pressured to he. This fell far short of a conscience-shocking investigation. Compare Wilcox v. Ford, 813 F.2d 1140, 1146-48 (11th Cir.1987).
• Faced with conflicting statements by Greene and DuPree, the two officers who placed Moran at the scene during some of the melee, and with numerous statements by other officers exonerating Moran, Chief Henderson and the other defendants left the criminal prosecution in the hands of the Circuit Attorney, who pursued the prosecution through a trial while the Police Department pursued administrative charges. Sergeant Moran was acquitted of the criminal charges, and after a hearing, the Board of Police Commissioners acquitted him of all but one administrative charge. . Moran appealed; the Circuit Court for the City of St. Louis affirmed the Police Board’s disciplinary action.
Based on the evidence introduced by Moran at trial, I conclude he proved nothing even approaching conscience-shocking misconduct by any defendant. Moran was present during a tragic encounter between police and a young man who could not explain his innocent behavior. Moran was accused by a fellow police officer of participating in an unnecessary beating of that citizen. Facing these serious charges, Moran had a right to procedural due process in the ensuing criminal and administrative proceedings. He was afforded that right and was ultimately found not guilty of using excessive force. The entire process was surely stressful, humiliating, and expensive, and it is unfortunate that a public servant engaged in this hazardous line of work should be required to defend himself in this fashion from charges that prove to be unfounded. But as Chief Justice Rehnquist said in Baker v. McCollan, 443 U.S. at 145, 99 S.Ct. 2689, “[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released.” On the undisputed facts of this case, procedural due process is all the protection the Due Process Clause affords.
Moreover, even if I were to accept the unreasonable fact inferences the court draws from this record, I would still conclude that Moran failed to present a submissible case of conscience-shocking misconduct. The Supreme Court has consistently “rejected claims that the Due Process Clause should be interpret *657 ed to impose federal duties that are analogous to those traditionally imposed by state tort law.” Collins, 503 U.S. at 128, 112 S.Ct. 1061; see Shrum v. Kluck, 249 F.3d 773, 779 (8th Cir.2001) (“[t]he purpose of [the shocks the conscience] fault standard is to distinguish the constitutionally-based § 1983 liability from traditional tort law claims”); Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1458 (8th Cir.1996). Although used sparingly, Missouri’s tort of malicious prosecution specifically protects its citizens from the acts alleged by Moran to be conscience-shocking. The alleged police misconduct — engaging in a conspiracy to manufacture and use false testimony to prosecute an innocent police officer — is exactly the type of misconduct the tort of malicious prosecution is designed to remedy. See Mershon v. Beasley, 994 F.2d 449, 453 (8th Cir.1993). In these circumstances, it is inappropriate to find the conscience-shocking element necessary for a substantive due process violation.
II. Malicious Prosecution.
To prove malicious prosecution under Missouri law, Moran must prove that one or more defendants initiated or continued a prosecution without probable cause. “The charge of malicious prosecution is no favorite of the law and when made the elements necessary to sustain it must be strictly and clearly proven.” Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W.2d 835, 838 (1950). At trial, Moran introduced no evidence tending to show that any defendant was responsible for the initiation or continuation of his criminal prosecution. On the contrary, the evidence showed that the decisions to seek an indictment and to initiate and pursue the prosecution rested exclusively with the Circuit Attorney, Dee Joyce Hayes, who did not testify during plaintiffs case. “The return of an indictment by a grand jury is prima facie evidence of probable cause in an action for malicious prosecution” which may be rebutted only by “proof that the indictment was obtained by false or fraudulent testimony or by other improper means, or that defendant procured the indictment believing plaintiff to be innocent.” Harper, 233 S.W.2d at 839-40. Moran introduced no such evidence at trial. Accordingly, the district court did not err in granting judgment as a matter of law dismissing the malicious prosecution claim.
The other issues raised by Moran on appeal are reviewed under the abuse of discretion standard and in my view are without merit. For all of the aforementioned reasons, I would affirm the district court and therefore respectfully dissent.